**NATHANIEL BASOLA SOBAYO**    *Original*
**Doing Business As:Kingways Capital Partners, LLC**
**2148 UNIVERSITY AVENUE, East Palo Alto, California 94303**

**Email: nathaniel.sobayo@gmail.com**
**Telephone: 650-323-1849.    Fax: 650-228-2492.  Cell: 408-323-1849**

**Re: In re Kingway Capital Partners, LLC;**
**Chapter 11 Bankruptcy Case No. 14-31532**

United States Bankruptcy Court for the Northern District of California, San Francisco Division

In re: KINGSWAY CAPITAL PARTNERS, LLC :

Chapter 11 Debtor :
Bankrupcy Case. No. 14-31532

In re: KINGSWAY CAPITAL PARTNERS, LLC :

Adversary Case. No. _ _- _ _ _ _ _

**VERSUS**

**DEFENDANTS:**    *Jury Trial Demanded.*

1. Slavik S. Leydiker, A Purported Crooked, Fraudulent Lawyer, and a Co-conspirator with all other defendants named herein, and should be disbarred.

2. Maria Sosa, A purported Crooked, Fraudulent land lady, fake property owner, and a Co-conspirator with all other defendants named herein.

3. Sosa Maria G Trust, as fake property owner, and a Co-conspirator with all other defendants named herein.

4. Maria Sosa's insurer, identity yet unknown, and must be ascertained for identifications, and a Co-conspirator with all other defendants named herein.

5. Jeffrey Johnson, of Roof Guard Company, Inc, a purported fake and fraudulent roof worker;  and a Co-conspirator with all other defendants named herein.

6. Roof Guard Company, Inc, a purported fake and fraudulent roof entity/worker;  and a Co-conspirator with all other defendants named herein.

7. Inter West Insurance Services, Insurance Agency for Jeffrey Johnson & Roof Guard Company, Inc, and a Co-conspirator with all other defendants named herein.

8. Steve Carmassi, Inter West Insurance Services, for Jeffrey Johnson & Roof Guard Company, Inc, and a Co-conspirator with all other defendants named herein.

9. First Mercury Insurance NAIC # 10657, Insurer for Jeffrey Johnson & Roof Guard Company, Inc; and a Co-conspirator with all other defendants named herein.

10. State Compensation Insurance Fund (CA) NAIC # 35076, Insurer for Jeffrey Johnson & Roof Guard Company, Inc.

11. CUSTARD INSURANCE ADJUSTERS, FOR FIRST MERCURY INSURANCE; and a Co-conspirator with all other defendants named herein.

12. Jaime Alvarez, A CROOKED, FRAUDLENT, Real Estate Broker for Maria Sosa, as her Property Sale listing agent, and evil minded real estate agent, and a Co-conspirator with all other defendants named herein.

13. Dan Beatty, a purported, evil minded, crooked, and fraudulent Lawyer for Maria Sosa, without the required investigations and due diligence(s), required by law before, any legal advice, and before engaging in evil based litigations, of honest citizens, and a Co-conspirator with all other defendants named herein.

15. Jennifer Loskamp, evil minded Realtor of Coldwell Banker, a franchise division; for proposed and purported new buyer of subject Property, yet to be identified; and a Co-conspirator with all other defendants named herein.

14. Chris Shaheen, evil minded Commercial Associate of Coldwell Banker, a franchise division; for proposed and purported new buyer of subject Property, yet to be identified; and a Co-conspirator with all other defendants named herein.

15. Bret Husted, Prevention Inspector for proposed new buyer, yet to be identified; and a Co-conspirator with all other defendants named herein.

16. Proposed New Buyer of Subject Property, yet to be identified, and a Co-conspirator with all other defendants named herein.

## Adversary Complaint

### *Jurisdiction*

#1. This is an action under the Fair Debt Collection Practices Act, hereinafter

"FDCPA," 15 U.S.C. §1692a, et seq.,
and for common law fraud.

#2. Jurisdiction in this case is founded upon 15 U.S.C.1692k which grants the federal
District Courts jurisdiction to hear this action without regard to the amount in
controversy.

#3. This Court has jurisdiction over case as an adversary proceeding pursuant to 28
U.S.C. §§ 157, 1334 and 11 U.S.C. §523. This is a core proceeding under 28 U.S.C. §
157(b)(2)(O).
////
////
Parties

#4. The plaintiff is KINGSWAY CAPITAL PARTNERS, LLC , a sui juris and the debtor /
plaintiff in this action.

## ALL THAT FOLLOW ARE DEFENDANTS :

1. Slavik S. Leydiker, A Purported Crooked, Fraudulent Lawyer, and a Co-conspirator
   with all other defendants named herein, and should be disbarred.

2. Maria Sosa, A purported Crooked, Fraudulent land lady, fake property owner, and a
   Co-conspirator with all other defendants named herein.

3. Sosa Maria G Trust, as fake property owner, and a Co-conspirator with all other
   defendants named herein.

4. Maria Sosa's insurer, identity yet unknown, and must be ascertained for
   identifications, and a Co-conspirator with all other defendants named herein.

5. Jeffrey Johnson, of Roof Guard Company, Inc, a purported fake and fraudulent roof
   worker; and a Co-conspirator with all other defendants named herein.

6. Roof Guard Company, Inc, a purported fake and fraudulent roof entity/worker; and
   a Co-conspirator with all other defendants named herein.

7. Inter West Insurance Services, Insurance Agency for Jeffrey Johnson & Roof
   Guard Company, Inc, and a Co-conspirator with all other defendants named herein.

8. Steve Carmassi, Inter West Insurance Services, for Jeffrey Johnson & Roof Guard
   Company, Inc, and a Co-conspirator with all other defendants named herein.

9. First Mercury Insurance NAIC # 10657, Insurer for Jeffrey Johnson & Roof Guard
   Company, Inc; and a Co-conspirator with all other defendants named herein.

10. State Compensation Insurance Fund (CA) NAIC # 35076, Insurer for Jeffrey Johnson & Roof Guard Company, Inc.

11. CUSTARD INSURANCE ADJUSTERS, FOR FIRST MERCURY INSURANCE; and a Co-conspirator with all other defendants named herein.

12. Jaime Alvarez, A CROOKED, FRAUDLENT, Real Estate Broker for Maria Sosa, as her Property Sale listing agent, and evil minded real estate agent, and a Co-conspirator with all other defendants named herein.
////
////
////

13. Dan Beatty, a purported, evil minded, crooked, and fraudulent Lawyer for Maria Sosa, without the required investigations and due diligence(s), required by law before, any legal advice, and before engaging in evil based litigations, of honest citizens, and a Co-conspirator with all other defendants named herein.

15. Jennifer Loskamp, evil minded Realtor of Coldwell Banker, a franchise division; for proposed and purported new buyer of subject Property, yet to be identified; and a Co-conspirator with all other defendants named herein.

14. Chris Shaheen, evil minded Commercial Associate of Coldwell Banker, a franchise division; for proposed and purported new buyer of subject Property, yet to be identified; and a Co-conspirator with all other defendants named herein.

15. Bret Husted, Prevention Inspector for proposed new buyer, yet to be identified; and a Co-conspirator with all other defendants named herein.

16. Proposed New Buyer of Subject Property, yet to be identified, and a Co-conspirator with all other defendants named herein.

#5. All defendants herein are all debt collectors as defined by the FDCPA, 15 U.S.C. §1692a(6), by the operations of their conspiracy and the judicial history of this case and all related cases.

## Cause of Action
## Facts Common to All Counts

# #6.
ALL DEFENDANTS HAVE BEEN ON NOTICE THAT
COMPLAINTS ARE TO BE FILED IN THE COURT OF LAW, IF THIS MATTER IS NOT URGENTLY HANDLED IN A VERY REASONAABLE WAY FOR SETTLEMENT OUT OF COURT.

BY:

NATHANIEL BASOLA SOBYO,

KINGSWAY CAPITAL PARTNERS, LLC,

FOR FEDERAL AND CALIFORNIA STATE CIVIL LAWS VIOLATIONS AND

ALLEGATIONS AGAINST THE IDENTIFIED DEFENDANTS AS CAPTIONED HEREIN.

////

////

Notice was hereby given that Plaintiff in this matter, identified as ;

NATHANIEL BASOLA SOBYO, Plaintiff, KINGSWAY CAPITAL PARTNERS, LLC,

hereby demand urgent and immediate handling of this COMPLAINT; otherwise, plaintiffs will

file this same action in the Court; for Judgment or order against defendants as alleged.

## PREAMBLE OF COMPLAINTS AND VIOLATIONS OF THE LAWS BY DEFENDANTS:

1. FIRST OCCURRENCE OF HEAVY RAIN WATER DAMAGES OF PLAINTIFFS' PROPERTIES

   VIA RAIN ROOF LEAKS, SHOWERS, AND HEAVY RAIN WATER POUR(S), THE

   OCCURRENCE WERE WITNESSED BY BOTH MARIA SOSA THE PORTPURTED PROPERTY

   OWNER AND PATRICK BROCK, THE PROPERTY MANAGER FOR MARIA SOSA, AND A

   THIRD PARTY CHRISTOPHER WUILLEMIN.

2. SECOND OCCURRENCE OF HEAVY RAIN WATER DAMAGES OF PLAINTIFFS' PROPERTIES

   VIA RAIN ROOF LEAKS, SHOWERS, AND HEAVY RAIN WATER POUR(S), THE

   OCCURRENCE WERE WITNESSED BY MARIA SOSA THE PORTPURTED PROPERTY

   OWNER AND PATRICK BROCK, THE PROPERTY MANAGER FOR MARIA SOSA, AND A

   THIRD PARTY CHRISTOPHER WUILLEMIN.

3. **COUNTLESS OCCURRENCES OF VARYING STRENGTH OF RAIN WATER DAMAGES OF**

**PLAINTIFFS' PROPERTIES VIA RAIN ROOF LEAKS, SHOWERS, AND RAIN WATER**

**POUR(S), THE OCCURRENCES WERE ALL WITNESSED BY MARIA SOSA THE**

**PORTPURTED PROPERTY OWNER AND PATRICK BROCK, THE PROPERTY MANAGER**

**FOR MARIA SOSA, AND A THIRD PARTY CHRISTOPHER WUILLEMIN.**

4(a) This is a Complaint for Violations of Series of City, State, and Federal Laws,

Statutes, Codes, Rules and Constitutions.

4(b) From credible witness these PLAINTIFF ascertained that City Of East Palo Alto staff said it found very serious code violations and structural issues in the building, but not limited to human life endangerment, blights, plumbing(s) appurtenants, electrical appurtenants, sewer systems, illegal make shift toilet room, illegal sewer, sanitary, flood drainage systems, under the subject property, and throughout the outside perimeters of the subject property, inadequate electrical lighting fixtures inside and outside the subject building, which entire building also houses a handful of other businesses.

*City officials have deemed the "Entire Subject Property" to be deteriorated and hazardous, and in violations of City, County, California State, and Federal BUILDING(S) and Public Health and Safety Codes.*

*Meanwhile, these PLAINTIFF have given more that 3 years CONTINEOUS NOTICES TO MARIA SOSA AND HER BUSINESS PARTNERS AND COLLABORATORS, to come up with a plan of action outlining what can be done to stabilize and to retrofitting this subject deteriorated and hazardous building, hitherto, MARIA SOSA AND HER ASSOCIATES, AS DEFENDANTS, HAVE IGNORED, SUPPRESSED, OPPRESSED, AND EXPLOITED THESE PLAINTIFF.*

*This PLAINTIFF contend that Government Authorities and Court of Laws at all levels throughout the lands of the United States of America, who regulate, interpret and enforce Building and Housing Code may consider a demolition order IF THESE ALLEGATIONS GET THE ATTENTIONS OF GOVERNMENT AGENCIES AND OR THE LAW COURTS, depending upon what actions the owner*

takes to repair the building conditions, which are now deemed substandard, AS CONTENDED BY THIS PLAINTIFF.

According to Government "COUNTY OF SAN MATEO" records; the property is purportedly owned by one :

Sosa Maria, purported land owner and property owner. And Sosa Maria G Trust, as property owner.

////

As of the day of today NOVEMBER 13th, 2014, PLAINTIFF'S walk-through by

NATHANIEL BASOLA SOBAYO, Still confirms that the

Fire Department and Codes Enforcement authorities , when summoned at City, County, California State, and Federal levels, will surely confirmed that "there continues to be several very serious code violations and structural issues that have become even more dangerous since our previous building survey on the same subject property.

Among the conditions cited by Nathaniel Basola Sobayo, and that may be further cited by the GOVERNMENT staff are the following:

- The structure's disrepair creates life-safety issues and environmentally hazardous conditions.
- 
- The subject building or space of these PLAINTIFFS, lacks adequate exits for fires or panic situations, ON THE GROUNDS THAT THE METALLIC FOLDING GATE AT THE BACK OF THE PLAINTIFFS' PURPORTEDLY LEASED SPACE,
- AND MANY OTHER BUILDING CODES' VIOLATIONS ISSUES, have not been functional, they are defective, forming a FIRE TRAP AND LIFE ENDANGERMENT, for some past weeks, but MARIA SOSA AND HER CO-CONSPIRATORS, continue to ignore, the repair requests made through PATRICK BROCK; his property manager.

THE SUB-DIVISION OF THE ENTIRE SPACE, VIOLATES ALL GOVERNMENT BUILDING, HEALTH AND SAFETY CODES, WITHOUT ANY JUST CAUSES.

- *The required fire sprinkler system for subject Property is NOT IN EXISTENCE, SUBJECTING PLAINTIFF, to catastrophic danger and further losses.*
- *The roof and interior building systems throughout have remained insufficiently maintained for several years.*
- *The structure is decayed to the point that portions of the building may fall and injure these PLAINTIFFS and other people on or off the property.*

*PLAINTIFFS FURTHER CONTEND that structural members of the building's roof and ceiling have deteriorated and show signs of failure; PLAINTIFF are not sure if there are roof leaks over their own entire space in the building; MARIA SOSA AND THE ROOFING CONTRACTOR REFUSE TO GIVE WRITTEN ASSURANCE TO PLAINTIFF THAT THE ROOF AND CEILING ISSUES HAVE BEEN PERMANENTLY REPAIRED TO THE EXCLUSIONS OF ANY FUTURE RAIN WATER LEAKS, AND OR OTHER BAD WEATHER CONDITIONS.*

*The exterior and interior surfaces and the under ground sewer and drainages are not properly functioning, they are also unsanitary and there is excessive water damage and mold; the plumbing system is not properly functional and operational; heating units, ductwork, and electrical systems are damaged; and the required fire sprinkler system is NOT IN EXISTENCE, THESE POSE EXTREME FIRE AND GAS INFERNO AT ANY TIME, ACCORDING TO PACIFIC GAS AND ELECTRIC, "PG&E".*

*PLAINTIFF constantly observe "Mysterious Water Drips" but can not tell where the drips come from. An ugly hole was created in the roof, by some repair men from MARIA SOSA, and have since been ignored.*

*PLAINTIFF, CAN SEE on a dry, sunny day, that gravels were visible on the floors beneath some holes.*

*SOME ELECTRICAL FIXTURES of the CEILING ARE HANGING LOSE, OTHERS ARE IN DISREPAIRS and gravel from the roof or ceiling are starting to look like a fall may occur inside the business, posing a life-safety issue.*

*THESE PLAINTIFF'S COMPLAINTS ARE NOW WRITTEN, BECAUSE PLAINTIFF felt like it was an emergency situation.*

*PLAINTIFF, is not sure what is holding up the roof and the ceiling in parts of the building, leased by the same plaintiff.*

*IF THE MATTERS IS PERMITTED TO GO TO THE VARIOUS GOVERNMENT AGENCIES AND OR ANY LAW COURTS, it is believed that such government staffs may recommended the entire building be declared unfit for human occupation or use, and MAY RECOMMEND CONDEMNATION .*

*PLAINTIFF CONTENDS that 100 to 1000 percent of the overall structure of the building are deemed unsafe for human occupation or use as APRIL 1st of 2011, when PLAINTIFF first walk-through the space, but purported owner MARIA SOSA did not inform this plaintiff of these facts.*

*To date, there appears to have been no substantial building or fire safety improvements in accordance with adopted building or fire code requirements over the past many years, in this Country.*

*5.*

*To date and since signing a formal written lease agreement, PLAINTIFF have paid to*

*MARIA SOSA, the sum of $29,750.00, as lease payments, but have not been able to utilize the space "LEASED" for the purpose of conducting the intended business activities, in any degree of safety and comfort.*

*PLAINTIFF , HAVE ALSO SERIES OF COMPUTER HARDWARES, COMPUTER SOFTWARES, AND MANY ELECTRONIC COMPONENTS AND ABOUT 40 YEARS OF BUSINESS, ACCOUNTING, HISTORICAL AND LOGISTICALPAPER RECORDS,THAT HAVE BEEN DESTROYED, DEGRADED, CORRUPTED AND COMPROMISED.*

*IT IS ESTIMATED THAT WELL OVER $5,000.000.00 IN AGREGATE PROPERTIES DAMAGES HAVE BEEN SUSTAINTED AS A LOSS BY THE ILLEGAL NEGLEGENCE OF THESE DEFENDANTS AND MARIA SOSA, INCLUDING MANY OTHER ILLEGAL VIOLATIONS.*

*THE INITIAL SUM OF $250,000.00, IS NEEDED FOR LOGISTICAL WORKS, IN ORDER TO HIRE EXPERTS AND NON EXPERTS TO ASCERTAIN ...................*

*THE SPECIFIC AMOUNTS OF MONEY FOR THE APPROXIMATE PROOF(S) OF CLAIMS AND THE EXACT MONETARY DAMAGES, TO BE EXACTLY SO CLAIMED. AN AMOUNT YET TO BE DETERMINED IS ALSO CLAIMED BY THESE PLAINTIFF, FOR PUNITIVE DAMAGES AND OR FOR EXAMPLARY DAMEGES.*

6. *Starting on May 15th, 2014, the amount of $1,750.00, as regular lease monthly payments, for "DEFENDANT'S DEATH TRAP" space, will now be accumulated, and kept for Plaintiff's use, for these same Plaintiff' monthly payments for the subject property now purportedly been leased by PLAINTIFF, until this case is resolved.*

7. *Direct Payments to Maria Sosa will then be resumed by plaintiff, as soon as the Complaint's issues are settled and concluded, plaintiff's satisfactions.*

7. *Rat and Mouse Infestations were reported for the second time by these plaintiff, only to be totally ignored by Maria Sosa and all co-defendants.*

9. *Parking Spaces and their issues and problems ,*

*have been raised by Plaintiff,*

*again only to be ignored by Maria Sosa and all defendants.*

10. *Offer of intents to purchase the subject property " FOR REDEVELOPMENT,*
*by the Plaintiff were initiated,*

*only to be ignored, suppressed and depressed by ways of prejudice and*

*discrimination of Maria Sosa and her associates and partners, against plaintiffs,*

*all in violations of the Federal, State, County and City legal and Constitutional*

*rights. A legal Causes of actions may be further initiated to redress these serious legal violations, by a leave of this court to do so.*

11. *Photographs, and pictures of damaged properties and documents, exist to support the proofs of claims of Plaintiff,*

*and may be used when they are so required.*

12. *MARIA SOSA AND HER CO-DEFENDANTS IN THIS COMPLAINT ARE IN GROSS LEGAL VIOLATIONS THESE TWO PROVISION OF THE WRITTEN LEASE AGREEMENT, INCLUDING BUT NOT LIMITED TO MOST OF THE OTHER WRITTEN AND ORAL AGREEMENTS.*

*USE OF PREMISES. Tenant may use the Premises for Real Estate Investments , Business Sales, Business Marketing, Business Management, Business Marketing Communications, International Transactions, Business Agencies, Rental Agencies, Imports & Export Services, WholeSale & Retail Services, Business Consulting Services, Business Incubator Services, Offices For East Palo Alto & Belle Haven Chamber of Commerce Services, but not limited to all relevant & partinent legally possible services and use. The Premises may be used for any other purpose with the prior written consent of Landlord, which shall not be unreasonably withheld. Tenant shall notify Landlord of any anticipated extended absence from the Premises not later than the first day of the extended absence.*

*EXCLUSIVITY. Landlord shall not directly or indirectly, through any employee, agent, or otherwise, lease any space within the property (except the Premises herein described), or permit the use or occupancy of any such space whose primary use of business is in, or may result in, competition with the Tenants primary use of business. The Landlord hereby gives the Tenant the exclusive right to conduct their primary use of business on the property.*

5.

## FACTUAL STATEMENTS AND ALLEGATIONS:

## On April 1st of 2011, MARIA SOSA, LEASED OUT APPROXIMATELY, A

## 17 FEET BY 79 FEET, portion of her property identified as

## 2148 UNIVERSITY AVENUE, EAST PALO ALTO, CALIFORNIA, to

NATHANIEL BASOLA SOBYO, Plaintiff, and KINGSWAY CAPITAL PARTNERS, LLC,

at the rate of $1400.00, with a deposit of $1,400.00, collected. Although Plaintiff as

tenants documented their understandings of the terms and conditions of the lease, the

lease were never consummated in writing, because of the refusal of MARIA SOSA, to

do so. All efforts to reasonably consummate the lease by tenants, were ignored,

suppressed and oppressed by MARIA SOSA, YET MARIA SOSA continue to collect the

sum of $1400.00 from APRIL 1st, 2011, to January 15th, of 2013, which equals to the

sum of $31,500.00, which sum is now demanded to be refunded in full by MARIA

SOSA, on the following grounds:

That MARIA SOSA, HAVE NOT KEPT TO THE TERMS AND CONDITIONS OF ANY

AND ALL OF THE LEASE AGREEMENT WITH THIS PLAINTIFF, ORAL NOR

WRITTEN.

THE INITIAL ORAL UNDERSTANDING(S),

The Addendum #1,
The Addendum #2,
AND
THE COMMERCIAL LEASE AGREEMENT "WRITTEN", THAT
ARE FOLLOWING BELOW ; WILL SERVE TO PRESENT AND
SUPPORT
SOME OF THE FACTUAL CONTENSIONS
OF THESE PLAINTIFFS, WHEN COMPARED & CONTRASTED.
// //
// //
The PLAINTIFFS, have already touched on the Initial ORAL
UNDERSTANDING(S) AND AGREEMENT, AS ABOVE STATED
AND CAPTIONED, THEREFORE NO NEED FOR FURTHER
ELUCIDATION(S) ON THAT.
////
////
////
////
////
////
////

////
////
////
////
////
////
////

# Addendum #1

To The written
Commercial Lease
by Kingsway Capital Partners, LLC
on 2148 University Ave,
East Palo Alto, California 94303

Phone: 650-323-1849.     FAX: 650-228-2492

e-mail: nathaniel.sobayo@gmail.com

ITEM NO.

a)
Owner agrees to automatically extend the duration of lease for a
(4) 5 year durations on the same term and conditions of $1400.00
monthly rent or lease payments for the first two 5 year terms; for the
following reasons:

1)
The U.S. Economy will not rebound for another 10 years;
from the date of this lease.

2)
Over the duration of the lease, lease holder, may have to do substantial lease
hold Improvements, both inside and outside the leased premises.

3)
The monthly lease payment of $1,400.00 will permit Lessee to partially
defray the anticipated substantial lease hold Improvement.

4)
It is anticipated that the business hours of Lease holder shall be extended
to two shifts and may be 3 shifts on 24 hours 7 days per week, when it
becomes viable to do so.

5)

To become profitable a diversity of business services must be offered with Substantial Improvements to the premises.

////
////
////
////
////
////
////

6) For reasons of the U.S. Economic downturn,
it is going to require an immediate, medium, and long range investments of:

a) Material resources.
b) Human Staffing resources.
c) Money and financial resources.
d) but not limited to Sales, Promotions and Marketing resources.

7)
To our Transportation's, Vehicles Rental Agency Services:

We must secure parking spaces on another nearby location to hold vehicles for potential Customers, if these services are to flourish and prosper.

ITEM
b)
Lessor agrees to install (2) two flood lights,
one directly in the front entrance area of our leased premises;
 and
the other directly in the back entrance,
for general safety
and customer attractions; when it becomes dark in the evenings.

ITEM
c)
Lessor agrees to permit the Lessee to operate more than
Real Estate Investment Services at the premises that are legally permitted.

Our current services are the following stated below:
1)
Kingsway Services
Real Estate Property Services & Consulting
Investment Problems & Solutions
Mortgage Problems & Solutions and Property Managers
2)

Technical Services

Computer Sales Services
Computer Software Services
Computer Hardware Services
Computer Repair Services
Electronic Printing and Copying Services
Document Stations for the public
Social Media Stations for the public

3)
TV; Radio; & Electronics

TV Sales & Services & Repairs
Radio Sales & Services & Repairs
 4)
Transportation Services Agency

Vehicle Rental Agency Services.
Daily Rentals Services,
Weekly Rentals Services,
Monthly Rentals Services,
Rent To Owner Services

ITEM
d)
Although Lease holder is absolutely not making demands for any unreasonable
repairs, yet lessee can not acknowledge that the leased promises are in
adequate enough conditions, and that the same lease holder can not at this
current time commit to maintain the premises in conditions as it is, at
lease holder's own expenses, as they relate to repairs of plate glass, Electrical
wirings, plumbing  and heating installations and any other system or
equipment, to including ceiling, flooring, windows sun screens and blinds.

ITEM
e)
When adequate funding are acquired by this lease holder, and the lease holder is
able to do any lease hold Improvements, the lessor's approval will be
obtained before any such lease hold Improvements are done.

Very Truly Yours
Nathaniel Basola Sobayo,                          June 18th, 2011
// //
// //
// //

// //
// //
// //
// //
// //
// //
// //
// //
// //

Addendum #2

Requests For Conditions of Leasing Premises
@
2148 University Avenue, East Palo Alto, ca 94303
Introduction:
Addendum #1: was written & sent on June 18 2011.
1.
Lease holder Requests for Removal of front view left Side Signs, that says
Maria's Plaza and the front view Rancho Grande and Polynesian
Restaurant, Tonga, Samoa, Island & Fiji and the blighted remains of the fixtures.
2.
Lease holder hitherto or as of this writing have paid in excess of
$21 ,OO0.00 U.S.dollars, since April1st, 2011,
in rent & lease payments, and now need to secure a
meaningful lease agreement with lessor.

Lease holder is yet to unpack and Settle in the premises,
because of dust producing ventilation at the back side of
the location and Premises.

Lease holder is requesting a custom installed sliding glass doors,
in front of the rolling doors, in the back side of the premises.
This particular item was started but not completed.

3.
Lease holder is seeking roof inspections and reports of the premise's roof,
to assure safety from potential rain damages from defective roof and leaks
as experienced by lessor during the past months;

the extensive rain damages from the roof leaks suffered by lease holder,
are yet to be calculated; and claimed from the lessor's insurance and or directly from
lessor's personal entity.,

lease holder will like to prevent repetitions of such disasters and costly
horror(s) in the future.

4.
The Cold Air Conditioning and hot heating Systems, need to be in
excellent working conditions to prevent any repetition of past
suffering from bad air conditionings. WE HAVE PG&E LETTER OF INSPECTIONS
AUTHENTICATING THE DEFECTIVE APPURTENANTS.
Prepare by me,

Nathaniel Basola Sobayo                                    June 18th, 2012
// //

## *COMMERCIAL LEASE*

This Lease Agreement (this "Lease") is dated January 16, 2013, by and between MARIA SOSA, Landlord &
Patrick Brock, Agent & Property Manager ("Landlord"), and Nathaniel Basola Sobayo, dba: Kingsway
Capital Partners, LLC ("Tenant"). The parties agree as follows:

**PREMISES.** Landlord, in consideration of the lease payments provided in this Lease, leases to Tenant
APPROXIMATELY 17 FEET WIDE AND 79 FEET IN LENGTH (the "Premises") located at 2148 UNIVERSITY
AVENUE,, EAST PALO ALTO, CA 94303.

**TERM.** The lease term will begin on January 16, 2013 and will terminate on January 17, 2023.

**LEASE PAYMENTS.** Tenant shall pay to Landlord monthly installments of $1,750.00, payable in advance
on the sixteen day of each month, for a total lease payment of $213,500.00. Lease payments shall be
made to the Landlord at 475 BELL STREET, EAST PALO ALTO, CA 94303, which address may be changed
from time to time by the Landlord.

**SECURITY DEPOSIT.** At the time of the signing of this Lease, Tenant shall pay to Landlord, in trust, a
security deposit of $1,750.00 to be held and disbursed for Tenant damages to the Premises (if any) as
provided by law, the sum of $1400.00, is already in deposit with landlord, the balance of $350.00, shall
be paid in (14) monthly installments of $25.00, to make up the $1750.00, security deposit payment.

**POSSESSION.** Tenant shall be entitled to possession on the first day of the term of this Lease, and shall yield possession to Landlord on the last day of the term of this Lease, unless otherwise agreed by both parties in writing. At the expiration of the term, Tenant shall remove its goods and effects and peaceably yield up the Premises to Landlord in as good a condition as when delivered to Tenant, ordinary wear and tear excepted.

**USE OF PREMISES.** Tenant may use the Premises for Real Eastate Investments , Business Sales, Business Marketing, Business Management, Business Marketing Communications, International Transactions, Business Agencies, Rental Agencies, Imports & Export Services, WholeSale & Retail Services, Business Consulting Services, Business Incubator Services, Offices For East Palo Alto & Belle Haven Chamber of Commerce Services, but not limited to all relevant & partinent legally possible services and use. The Premises may be used for any other purpose with the prior written consent of Landlord, which shall not be unreasonably withheld. Tenant shall notify Landlord of any anticipated extended absence from the Premises not later than the first day of the extended absence.

**EXCLUSIVITY.** Landlord shall not directly or indirectly, through any employee, agent, or otherwise, lease any space within the property (except the Premises herein described), or permit the use or occupancy of any such space whose primary use of business is in, or may result in, competition with the Tenants primary use of business. The Landlord hereby gives the Tenant the exclusive right to conduct their primary use of business on the property.

**PARKING.** Tenant shall be entitled to use any and all 16 parking space(s) for the parking of the Tenant's customers'/guests' motor vehicle(s), sharing the same parking space(s) with all other tenants'/guests', on first arrived use basis for all.

**PROPERTY INSURANCE.** Landlord and Tenant shall each maintain appropriate insurance for their respective interests in the Premises and property located on the Premises. Landlord shall be named as an additional insured in such policies. Both sides shall deliver appropriate evidence to each side as proof that adequate insurance is in force issued by companies reasonably satisfactory to both sides. Both side shall receive advance written notice from the insurer prior to any termination of such insurance policies. Both sides shall also maintain any other insurance which may reasonably be required for the protection of each side's interest in the Premises.

Tenant is responsible for maintaining casualty insurance on its own property.

**RENEWAL TERMS.** This Lease shall automatically renew for an additional period of One hundred and twenty months per renewal term, unless either party gives written notice of termination no later than Twenty four months prior to the end of the term or renewal term. The lease terms during any such renewal term shall be the same as those contained in this Lease.

////

////

////

////

**MAINTENANCE.** Landlord shall have the responsibility to maintain the Premises in good repair at all times.

**UTILITIES AND SERVICES.**

Landlord shall be responsible for the following utilities and services in connection with the Premises:

- water and sewer

- The landlord will be responsible for all repairs to the building, all appurtenants, inside and outside the property, which include all plumbing, eletrical, roof, ceiling, and all fixtures, as the property is from the begining of the lease to the end of the lease.

Tenant shall be responsible for the following utilities and services in connection with the Premises:

- electricity

- gas

- heating

- garbage and trash disposal

- janitorial services

- telephone service

- Upon the begining of the lease, tenant intends to do a major lease hold improvements of the property, with the approval of the landlord and the government authorities. All such intentions, and or services will be offered in specific details in writing for approval, prior to the start of any such duties and responsibilities, to be assumed by tenant.

Tenant acknowledges that Landlord has fully explained to Tenant the utility rates, charges and services for which Tenant will be required to pay to Landlord (if any), other than those to be paid directly to the third-party provider.

**TAXES.** Taxes attributable to the Premises or the use of the Premises shall be allocated as follows:

REAL ESTATE TAXES. Landlord shall pay all real estate taxes and assessments for the Premises.

PERSONAL TAXES. Landlord shall pay all personal taxes and any other charges which may be levied against the Premises and which are attributable to Tenant's use of the Premises, along with all sales and/or use taxes (if any) that may be due in connection with lease payments.

**DESTRUCTION OR CONDEMNATION OF PREMISES.** If the Premises are partially destroyed by fire or other casualty to an extent that prevents the conducting of Tenant's use of the Premises in a normal manner, and if the damage is reasonably repairable within sixty days after the occurrence of the destruction, and if the cost of repair is less than $35,000.00, Landlord shall repair the Premises and a just proportion of the lease payments shall abate during the period of the repair according to the extent to which the Premises have been rendered untenantable. However, if the damage is not repairable within sixty days, or if the cost of repair is $35,000.00 or more, or if Landlord is prevented from repairing the damage by forces beyond Landlord's control, or if the property is condemned, this Lease shall terminate upon twenty days' written notice of such event or condition by either party and any unearned rent paid in advance by Tenant shall be apportioned and refunded to it. Tenant shall give Landlord immediate notice of any damage to the Premises.

**DEFAULTS.** Tenant shall be in default of this Lease if Tenant fails to fulfill any lease obligation or term by which Tenant is bound. Subject to any governing provisions of law to the contrary, if Tenant fails to cure any financial obligation within 15 days (or any other obligation within 90 days) after written notice of such default is provided by Landlord to Tenant, Landlord may take possession of the Premises without further notice (to the extent permitted by law), and without prejudicing Landlord's rights to damages. In

the alternative, Landlord may elect to cure any default and the cost of such action shall be added to Tenant's financial obligations under this Lease. All sums of money or charges required to be paid by Tenant under this Lease shall be additional rent, whether or not such sums or charges are designated as "additional rent". The rights provided by this paragraph are cumulative in nature and are in addition to any other rights afforded by law.

**LATE PAYMENTS.** For any payment that is not paid within 15 days after its due date, Tenant shall pay a late fee of $26.25.

**CUMULATIVE RIGHTS.** The rights of the parties under this Lease are cumulative, and shall not be construed as exclusive unless otherwise required by law.

**NON-SUFFICIENT FUNDS.** Tenant shall be charged $28.00 for each check that is returned to Landlord for lack of sufficient funds.

**REMODELING OR STRUCTURAL IMPROVEMENTS.** Tenant shall have the obligation to conduct any construction or remodeling (at Tenant's expense) that may be required to use the Premises as specified above. Tenant may also construct such fixtures on the Premises (at Tenant's expense) that appropriately facilitate its use for such purposes. Such construction shall be undertaken and such fixtures may be erected only with the prior written consent of the Landlord which shall not be unreasonably withheld. Tenant shall may install awnings or advertisements on any part of the Premises with Landlord's prior written consent. At the end of the lease term, Tenant shall be entitled to remove (or at the request of Landlord shall remove) such fixtures, and shall restore the Premises to substantially the same condition of the Premises at the commencement of this Lease.

**INDEMNITY REGARDING USE OF PREMISES.** To the extent permitted by law, Tenant agrees to indemnify, hold harmless, and defend Landlord from and against any and all losses, claims, liabilities, and expenses, if any, which Landlord may suffer or incur in connection with Tenant's possession, use or misuse of the Premises, except Landlord's act or negligence.

**DANGEROUS MATERIALS.** Tenant shall not keep or have on the Premises any article or thing of a dangerous, flammable, or explosive character that might substantially increase the danger of fire on the Premises, or that might be considered hazardous by a responsible insurance company, unless the prior

written consent of Landlord is obtained and proof of adequate insurance protection is provided by Tenant .

**COMPLIANCE WITH REGULATIONS.** Tenant shall promptly comply with all laws, ordinances, requirements and regulations of the federal, state, county, municipal and other authorities, and the fire insurance underwriters. However, Tenant shall not by this provision be required to make alterations to the exterior of the building or alterations of a structural nature, without prior written consent of landlord or the government authorities.

**MECHANICS LIENS.** Neither the Tenant nor anyone claiming through the Tenant shall have the right to file mechanics liens or any other kind of lien on the Premises and the filing of this Lease constitutes notice that such liens are invalid. Further, Tenant agrees to (1) give actual advance notice to any contractors, subcontractors or suppliers of goods, labor, or services that such liens will not be valid, and (2) take whatever additional steps that are necessary in order to keep the premises free of all liens resulting from construction done by or for the Tenant.

**NOTICE.** Notices under this Lease shall not be deemed valid unless given or served in writing and forwarded by mail, postage prepaid, addressed as follows:

**LANDLORD:**

MARIA SOSA, Landlord & Patrick Brock, Agent & Property Manager

Care of : 475 BELL ST,

EAST PALO ALTO, CA 94303

**TENANT:**

Nathaniel Basola Sobayo, dba: Kingsway Capital Partners, LLC

P.O.BOX 1052

PALO ALTO, California 94302

Such addresses may be changed from time to time by any party by providing notice as set forth above. Notices mailed in accordance with the above provisions shall be deemed received on the third day after posting.

**GOVERNING LAW.** This Lease shall be construed in accordance with the laws of the State of California.

**ENTIRE AGREEMENT/AMENDMENT.** This Lease Agreement contains the entire agreement of the parties and there are no other promises, conditions, understandings or other agreements, whether oral or written, relating to the subject matter of this Lease. This Lease may be modified or amended in writing, if the writing is signed by the party obligated under the amendment.

**SEVERABILITY.** If any portion of this Lease shall be held to be invalid or unenforceable for any reason, the remaining provisions shall continue to be valid and enforceable. If a court finds that any provision of this Lease is invalid or unenforceable, but that by limiting such provision, it would become valid and enforceable, then such provision shall be deemed to be written, construed, and enforced as so limited.

**WAIVER.** The failure of either party to enforce any provisions of this Lease shall not be construed as a waiver or limitation of that party's right to subsequently enforce and compel strict compliance with every provision of this Lease.

**BINDING EFFECT.** The provisions of this Lease shall be binding upon and inure to the benefit of both parties and their respective legal representatives, successors and assigns.

**LANDLORD:**

    maria sosa               patrick brock

_____ Date: _____

MARIA SOSA, Landlord & Patrick Brock, Agent & Property Manager

**TENANT:**

**Nathaniel Basola Sobayo, dba: Kingsway Capital Partners, LLC**

By: nathaniel b Sobayo                    Date: 1-16-2014

Nathaniel Basola Sobayo

////

////

////

#7


Count I

#8.
 All above paragraphs relevant hereto are incorporated herein by reference.


#9.
DEFENDANTS's actions as alleged constituted a "legal action" prohibited by
15 USC §1692i, by the operations of defendants' co-conspiracy and fraudulent acts.

#10.
43. Defendants' negligence, conspiracy, and series of violations of laws and
violated §1692i and the FDCPA.

#11.

Count II

All above paragraphs relevant hereto are incorporated herein by reference.

#12.

DEFANDANTS' actions, as stated above, constituted a violation of §1692d since their
natural consequences were calculated to harass, oppress and abuse this PLAINTIFF at
his place of BUSINESS OPERATIONS AND EMPLOYMENT without authority of law.

#13.

Count III

#14.

All above paragraphs relevant hereto are incorporated herein by reference.

#15.

It should be noted by allegations, that , by fraud and by co-conspiracy, each and collectively were each and all acting as an agent of all other defendants herein.

The expression of the evil mindedness and tactics of each and all defendants included profanity, verbal harassment, strong-arm tactics and generally bullying unsophisticated and powerless debtor, such as this plaintiff .
#16.
DEFENDANTS' CONSPIRACIES AND FRAUDS; are attempts to unlawfully enrich themselves  and their other co-conspirators and defendants through fraud on this plaintiff and upon the court.

The said fraud in this case amounted to approximately $10,000.000.00.

#17.

THESE DEFENDANTS,
have and they continued hitherto, their persistent attempts at bullying with a stream of obscenities in a last desperate attempt to secure an illegal retaliatory payment of the eviction judgment, yet this:

**PLAINTIFF DO NOT OWE THEM ANY MONEY(S), NOR DAMAGES DONE TO THEM, THEY THOUGH; OWE THIS PLAINTIFF DAMAGES AS ALLEGED IN THE SUM OF $1,661,567.00.**

# THIS AMOUNT OF MONEY MUST BE COLLECTED, AS SOON AS IT IS FEASIBLE.

**AS ENTERED:**
**BY**
**THE CLERK OF THE COURT; IN THE PLAINTIFF'S COMPLAINT**
**SOBAYO, et al; v. SOSA, et al;**
**CASE NUMBER: CIV 530289**
**IN THE SUPERIOR COURT OF CALIFORNIA, SAN MATEO COUNTY**

Defendants' actions as stated above violated §§1692d, 1692d and 1692f, as well as FDCPA.

#18.

Count IV

#19.

All above paragraphs relevant hereto are incorporated herein by reference.

Upon information received by research these above defendants herein
have acted to conspire to defraud PLAINTIFF KINGSWAY CAPITAL PARTNERS, LLC, just like
multiple unsuspecting judgment debtors, have been robbed of thousands of dollars and as such,
the said actions as stated herein above, are not bon fide errors or unintentional conduct.
Federal Courts have general equity authority and the power to restrain future
conduct.

Given the past conduct of defendants, there is a strong likelihood that such
conduct will be repeated.

This court is requested to enjoin all defendants from enforcing this debt.

This court is further requested to sanction EACH AND ALL DEFENDANTS
for the unauthorized VIOLATIONS of the law and to enjoin future conduct of a similar
nature.

#20.

Count V

#21.

All above paragraphs relevant hereto are incorporated herein by reference.

Defendants are therefore guilty of perjury, and as such have violated §§1692d,
1692d and 1692f as well as the FDCPA.

#22.

Defendants' actions amount to common law fraud upon the plaintiff.

Defendants actions in this case were malicious, fraudulent and outrageous and
hence entitle this plaintiff to punitive damages.

#23.

Defendants actions herein have subjected plaintiff to humiliation and

embarrassment, as well as fear and anxiety about the loss of life and properties as a result.

#24.

Plaintiff has been required to retain counsel at the rate of $350.00 to 550.00 a hour to prosecute this action.

#25.

Plaintiff estimates that approximately $50,000.00 to $200,000.00 in counsel fees alone will be required to litigate this matter.

#26.

PLAINTIFF HEREBY MOVE THIS COURT IN MOTION FOR A LEAVE OF COURT TO AMEND THIS ADVERSARY PROCEEDINGS TO ADD SERIES OF ADDITIONAL CAUSES OF ACTIONS AS WELL  ALL OTHER NECESSARY PARTIES YET TO BE NAMED.

WHEREFORE, plaintiff demands judgment jointly and severally against the defendants herein for:

a. Actual damages.

b. Statutory damages.

c. Punitive damages.

d. For costs, interest, attorney's fees.

e. For three times the actual damages.

f. For an injunction against future conduct as enumerated herein.

g. and ;

h. Such other relief that the court feels is just and proper.

NATHANIEL BASOLA SOBAYO; Doing Business As: Kingways Capital Partners, LLC
2148 UNIVERSITY AVENUE, East Palo Alto, California 94303
Email: nathaniel.sobayo@gmail.com, Telephone: 650-323-1849.    Fax: 650-228-2492.  Cell: 408-323-1849

Re: In re Kingway Capital Partners, LLC; Chapter 11 Bankruptcy Case No. 14-31532        November 13th, 2014